UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MOONLIGHT MOUNTAIN RECOVERY, INC., an Idaho Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>JUSTIN MCCOY, an individual; ERIC MINNIG, an individual; COREY RICHARDSON, an individual; XAVIER "FRANCISCO" FLORES, an individual; JONATHAN HUNT, an individual; JOHN DOES 1-10; ROE ENTITIES 1-20,<br><br>        Defendants. | Case No. 1:24-cv-00012-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are three renewed motions to dismiss filed by Corey

Richardson (Dkt. 48), Jonathan Hunt (Dkt. 50), and Eric Minnig (Dkt. 51). For the

reasons described below, the Court will deny Richardson's and Minnig's motions

in their entirety and will grant in part and deny in part Hunt's motion.

## BACKGROUND

The Court has previously set forth the facts underlying Moonlight Mountain

**MEMORANDUM DECISION AND ORDER - 1**

Recovery's claims. *Mem. Dec. & Order* at 1–3, Dkt. 45. To reiterate, Moonlight

provides residential behavioral health and substance abuse disorder recovery

services. *Am Compl.* at ¶ 19, Dkt. 46. Moonlight alleges that Justin McCoy, a

former employee, unlawfully accessed Moonlight's proprietary and confidential

information and used that information to form competing businesses that copied

Moonlight's business model and diverted clients away from Moonlight. *Id.* at ¶¶

19, 39, 47, 55. While employed at Moonlight, McCoy began helping a Utah based

company, Renaissance Ranch, open an Idaho facility. *Id.* at ¶ 35. Renaissance

Ranch, despite McCoy's representations otherwise, competed directly with

Moonlight by providing behavioral and substance abuse residential treatment in

Idaho. *Id.* at ¶ 36. Soon after, while still employed at Moonlight, McCoy along

with Minnig and Hunt, formed Freedom Recovery, a company providing similar

services. *Id.* Both Minnig and McCoy were still employed by Moonlight, but

neither disclosed the existence of their competing business to Moonlight. *Id.* at ¶

43. McCoy eventually quit his job at Moonlight and started recruiting Moonlight

employees to work at these businesses. *Id.* at ¶ 42, 47–50.

Moonlight alleges that the defendants used Moonlight's confidential and

proprietary information to copy its business model and divert clients. The

defendants allegedly obtained this information, at least in part, by accessing

Moonlight's internal system called "BestNotes." *Id.* at 55. BestNotes is a secure healthcare record system that Moonlight uses to organize and maintain client records. *Id.* at ¶ 22. Authorized users are permitted access to BestNotes through the creation of a User ID which, among other things, allows Moonlight to monitor and control access to the system and to client's records. *Id.* at ¶ 24. Minnig, McCoy, and Richardson were all issued User IDs which enabled access to BestNotes. *Id.* at ¶ 24.

After McCoy left Moonlight, his BestNotes User ID was recorded attempting to login from the same devices he used to remotely access the system while employed with Moonlight. *Id.* at ¶¶ 57, 58. Moonlight alleges that McCoy used current Moonlight employees' BestNotes' access to obtain patient information. *Id.* at ¶¶ 62–65. More specifically, it alleges McCoy enhanced Minnig's access permissions in order to provide that information to McCoy. *Id.* at *Id.* at ¶ 60. While Minnig was still employed with Moonlight, Minnig's User ID logged into BestNotes using the same IP address McCoy used. *Id.* at ¶ 64. McCoy and Minnig continued to access BestNotes through an administrative account and Minnig's User ID, even after he was fired and was a member of a competing business. *Id.* at ¶ 62–63.

Moonlight filed this action against the defendants alleging claims under the

Computer Fraud and Abuse Act and Idaho state law. In March 2024, Minnig, Hunt, and Richardson moved to dismiss the Complaint, which the Court granted with leave to amend. Moonlight has now filed an Amended Complaint and Minnig, Hunt, and Richardson have all renewed their motions to dismiss. Moonlight opposes all three motions.

## LEGAL STANDARD

A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Detailed factual allegations" are not required, but a plaintiff must offer "more than…unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* (cleaned up). That is, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between the defendant and plaintiff's injury or damages. *See*

*Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The Court must dismiss a cause of action if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022) (citations, quotations, and alteration omitted).

## ANALYSIS

Richardson, Hunt, and Minnig each move to dismiss all of the claims against them. *See* Dkts. 48, 50, 51. Hunt also joins Minnig's motion to dismiss. Dkt. 50. Before turning to the merits of the motions, the Court must briefly address Moonlight's objection to Hunt joining Minnig's motion to dismiss.

Moonlight argues that such joinder is procedurally and substantively improper. At the outset, Rule 12(g)(1) states "[a] motion under this rule may be joined with any other motion allowed by this rule." Fed. R. Civ. P. 12(g)(1). This Court has permitted such joinder in other cases and sees no reason not to permit it here. *See e.g.*, *RS-ANB Fund, LP v. KMS SPE LLC*, Nos. 4:11-cv-00175-BLW; 4:11-cv-00179-BLW; 4:11-mc-07113-BLW, 2012 WL 128862, at *1 (D. Idaho Apr. 16, 2012). The cases cited by Moonlight suggesting joinder is only

appropriate where the movant shows how and why they are similarly situated to a co-defendant concern a motion for summary judgment, a motion to suppress, and a motion to sever. *See* Dkt. 39 at 2 (citing *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1151–52 (C.D. Cal. 2016); *United States v. Halgat*, No. 2:16-cr-265-GMN-CWH, 2018 U.S. Dist. LEXIS 226173 at *10 (D. Nev. 2018); and *United States v. Cerna*, No. CR-08-0730-WHA, 2011 U.S. Dist. LEXIS 12893, at *38 – 39 (N.D. Cal. Feb. 9, 2011)). It is plain from Minnig's motion that some of the arguments he makes apply equally to the other defendants and that Hunt may join in those arguments. Accordingly, the Court will permit joinder.

Turning now to the merits of the three motions. Moonlight's Amended Complaint alleges ten counts against the defendants. There is significant overlap between each defendant's motion, so the Court will address the motions together, beginning with count one.

## A.    Count One: Civil Conspiracy

Moonlight alleges all of the defendants acted together to "violate Moonlight's valid legal rights." *Am. Compl.* at ¶ 89, Dkt. 46. More specifically, it alleges the defendants conspired to gain unauthorized access to Moonlight's information for their benefit and that of the competing businesses. "A civil conspiracy that gives rise to legal remedies exists only if there is an agreement

between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *Tricore Investments, LLC v. Estate of Warren*, 485 P.3d 92, 121 (Idaho 2021) (quoting *McPheters v. Maile*, 155 P.3d 1166, 1174 (Idaho 2003)). "Civil conspiracy is not an independent claim for relief because 'the essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself.'" *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1086 (Idaho 2010) (quoting *McPheters*, 64 P.3d at 321). A plaintiff must allege "specific evidence of a plan or agreement to demonstrate the existence of the conspiracy at the time the alleged unlawful objective was accomplished." *Id.* "Conspiracy is only material for the purpose of making all of the defendants liable for each individual act of the other defendants, if the conspiracy is established." *Tricore*, 234 P.3d at 121 (internal quotation marks omitted).

Moonlight has sufficiently alleged the existence of a conspiracy between Minnig and McCoy. Minnig and McCoy, along with Hunt, formed a behavioral health treatment business that competed with Moonlight. *Am. Compl.* at ¶ 43, Dkt. 46. McCoy then convinced Minnig to leave Moonlight to work at the competing business. *Id.* at ¶¶ 50–52. McCoy, in conjunction with Minnig, obtained unauthorized access to Moonlight's patient information by enhancing Minnig's

BestNotes access permissions so that McCoy would still have access to the information after McCoy left Moonlight. *Id*. at ¶ 60. The attempted unauthorized access by both the McCoy and Minnig User IDs were from the same IP access. *Id.* at ¶ 63. Even after Minnig was terminated, his User ID attempted to login into BestNotes after the date of his termination. *Id.* at 66. Moonlight alleges that McCoy bragged about getting Moonlight employees to share client files with him, further supporting the inference that Minnig helped McCoy access client files. *Id.* at ¶ 67.

These allegations support the inference that Minnig and McCoy had an agreement to "accomplish an unlawful objective"—the unauthorized access of patient information and formation of competing businesses. *Tricore Investments, LLC*, 485 P.3d at 121. The two individuals were associated with the same competing businesses, their User IDs attempted to access Moonlight's system from the same IP address, and McCoy expanded Minnig's permissions.

The same is true of the allegations against Richardson, even if, as he points out, the allegations against him are not as robust as those against Minnig or McCoy. Nonetheless, Moonlight alleges that Richardson was a former employee who McCoy recruited to leave Moonlight. *Am. Compl.* at ¶ 50. After leaving Moonlight, Richardson went on to serve as the clinical director of behavioral

health businesses that were associated with McCoy. *Id.* at ¶ 51. Moonlight also alleges that Richardson improperly used his BestNotes access to share information with McCoy while still employed at Moonlight. *Id.* at ¶ 65. This is sufficient at the pleading stage to allege a conspiracy between McCoy and Richardson.

Finally, Moonlight alleges Hunt was a member of the conspiracy because he is a governor of a business that competes directly with Moonlight. *Id.* at ¶ 11. McCoy and Minnig are also governors of this company, which was formed while Minnig was still an employee at Moonlight. *Id.* Minnig and McCoy accessed Moonlight's confidential information for the benefit of Freedom Recovery and without authorization from Moonlight. *Id.* at ¶ 66–76. The inference that Hunt participated in this agreement is not unwarranted given his relationship with Minnig and McCoy and his participation in forming Freedom Recovery.

To be clear, "civil conspiracy is neither a cause of action nor a theory of liability." *Saint Alphonsus Diversified Car, Inc. v. MRI Assocs., LLP*, 334 P.3d 780, 797 n.4 (Idaho 2014). Rather, "[t]he existence of the conspiracy is only relevant insofar as it bears on the rules of evidence and the persons liable, including one conspirator liable for the conduct of the other." *Id*. Moonlight has adequately alleged the existence of a conspiracy between the defendants such that each of the coconspirators may be liable for the conduct of the others.

MEMORANDUM DECISION AND ORDER - 9

**B.    Count Two: Aiding and Abetting**

Moonlight alleges that each of the defendants are liable for aiding and abetting the other defendants' wrongful conduct. To be liable for aiding and abetting a civil wrong, Moonlight must allege (1) the existence of an underlying wrong; (2) knowledge of the wrong on the part of the aider and abettor; (3) substantial assistance by the aider and abettor; and (4) damages proximately caused thereby. *Zazzali v. Ellison*¸ 973 F. Supp. 2d 1187, 1208 (D. Idaho 2013). Moonlight explains that through this claim for aiding and abetting (along with its claims for civil conspiracy and concert of action), each defendant is liable for the acts of his co-defendants. Dkt. 56 at 6–7.

As discussed below, Moonlight has sufficiently alleged several wrongs that may underly an aiding and abetting claim. Specifically, it has alleged that Minnig and Richardson provided substantial assistance to McCoy by, at a minimum, accessing and sharing Moonlight's confidential information with competitors. *Am. Compl.* at ¶¶ 64–65, Dkt. 46. Further, the Amended Complaint supports the inference that both Minnig and Richardson knew of the underlying wrong. For one, as employees of Moonlight they would have known that sharing information with someone outside the organization was wrongful. *Id.* at ¶¶ 13, 14, 65. Further, based on both defendants' roles in McCoy's competing businesses, one can plausibly

infer they were aware that the material they provided was used for the competing businesses. *Id.*

Any claim against Hunt for aiding and abetting, however, must be dismissed. The Amended Complaint alleges an underlying wrong and the facts alleged therein support the inference that Hunt, as a co-governor of Freedom Recovery, was aware of those alleged wrongs. *Id.* at ¶ 11. That said, the Amended Complaint lacks any allegations that Hunt substantially assisted in the violation. Hunt's involvement as a co-founder of Freedom Recovery, without more, does not support the conclusion that he substantially assisted in any wrongdoing. Accordingly, Hunt cannot be held liable for aiding and abetting any other defendant. That said, the Court will dismiss any claim against Hunt for aiding and abetting with leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (Even when no request is made, "[a] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (internal quotation marks omitted)).

## C.    Count Three: Concert of Action

Moonlight also alleges that the defendants acted in concert with each other and are therefore jointly and severally liable under Idaho Code § 6-803(5). This provision provides that:

> A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert. . . . As used in this section, 'acting in concert' means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

Idaho Code § 6-803(5). Similar to Moonlight's claim for civil conspiracy, it has sufficiently alleged the defendants had a common plan: to use Moonlight's confidential and proprietary information to start competing behavioral health treatment centers. *Am. Compl.* at ¶¶ 11, 43, 50, 51, 60–76, Dkt. 46. Accordingly, Moonlight has plausibly alleged that the defendants may be jointly and severally liable for other's tortious acts. No more is required at this stage.

### D.    Count Four: CFAA

Minnig and Richardson both argue the claims against them under the Computer Fraud and Abuse Act, or CFAA, should be dismissed, but for slightly different reasons. Minnig argues that Moonlight's Amended Complaint fails to plausibly allege any damages recognized by the CFAA. Richardson, in contrast, argues that any damages under the CFAA stem from McCoy's conduct, not his.

Turning first to Minnig's argument. The Court dismissed Moonlight's first complaint based on its failure to plead that it suffered any cognizable damages. *See Mem. Dec. & Order*, Dkt. 45. Damage, as defined in the CFAA, is "any impairment to the integrity or availability of data, a program, a system or

information." 18 U.S.C. § 1030(e)(8). This definition is limited to "harm to computers or networks, not economic harm due to the commercial value of the data itself." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014). Moonlight's Amended Complaint alleges it incurred the cost of a third-party data security service provider to investigate the destruction, restore the integrity of the computer system, and advise Moonlight as to the appropriate upgrades. *Am. Compl.* at ¶¶ 69–72, Dkt. 46. In addition to this investigation, Moonlight devoted significant staff hours to the investigation as well as incurring attorneys' fees for assistance with the investigation. *Id.* at 73–74. These losses are cognizable under the CFAA. *See Sprint Solutions Inc. v. Pacific Cellupage Inc.*, No. 2:13-cv-0786-CAS-(JGx), 2014 WL 3715122, at *5 (C.D. Cal. July 21, 2014). Accordingly, Minnig's motion is denied with respect to the CFAA claim.

Richardson's motion suffers the same fate. Moonlight alleges that all of the defendants participated in a conspiracy to violate its rights—including under the CFAA. Even if, as Richardson claims, he had no part in the damages stemming from any CFAA violation, Moonlight has still alleged a cognizable claim against him because he can be held liable for the acts of his co-conspirators. Here, McCoy's actions were taken in furtherance of the conspiracy to violate Moonlight's rights. Richardson is a member of that conspiracy, and as such, is

liable for the acts of other members of the conspiracy. This argument applies with equal force to Hunt as he too may be liable for the acts of a coconspirator. Accordingly, the motions are denied as to the CFAA claim.

### E.    Count Five: Breach of Fiduciary Duty

All three defendants move to dismiss Moonlight's claim against them for breach of fiduciary duty. "To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Wesco Autobody Supply*, 243 P.3d at 1080 (quoting *Tolley v. THI Co.*, 92 P.3d 503, 511 (2004)). "Throughout the duration of an agency relationship, an agent has a duty to refrain from competing with the principal and taking action on behalf of or otherwise assisting the principal's competitors." *Id.* (quoting Restatement (Third) of Agency § 8.04).

Turning first to Minnig's motion. He does not suggest that no fiduciary relationship existed between him and Moonlight, instead arguing that as a former employee of Moonlight, he does not owe a duty of loyalty to his former employer. *R. Homes Corp. v. Herr*, 123 P.3d 720, 724 (Idaho 2005). Indeed, Moonlight terminated Minnig's employment in February 2022. *Am Compl.* at ¶ 50, Dkt. 46. While some of the allegations in the Amended Complaint are based on conduct that occurred after this date, some of the allegations are based on conduct prior to

Minnig's termination. For instance, the Amended Complaint alleges that Minnig shared patient information with McCoy and provided McCoy with access to Moonlight's system in order to assist McCoy in opening other behavioral health clinics while he was employed at Moonlight. *Id.* at ¶¶ 43, 50–52, 60–63.

Minnig argues that the likelihood that this information was used wrongfully to help Minnig or McCoy start Freedom Recovery is "too remote." Dkt. 9-1 at 11. Not so. Even if, as Minnig claims, Freedom Recovery did not open until after Minnig's termination, it is plausible that Minnig acted against the interest of Moonlight while still employed. Particularly because Freedom Recovery's articles of organization were filed in October 2021, while Minnig was still employed at Moonlight. *Am. Compl.* at ¶ 43, Dkt. 46. Thus, the inference that Minnig was undermining his employer's interests during his employment is not unwarranted.

The same is true of the claim against Richardson. Moonlight alleges Richardson started working at one of McCoy's competing businesses after Moonlight terminated his employment. *Id.* at ¶¶ 50–51. It also alleges that while still employed at Moonlight, Richardson used his BestNotes User ID to access client information that he then shared with McCoy. *Id.* at ¶ 65. Undoubtedly, Richardson owed fiduciary duties to Moonlight while he was still employed there. If, as the Amended Complaint alleges, he shared confidential and proprietary

information with a competitor of Moonlight, that constitutes a breach of the duty of loyalty. *Wesco Autobody Supply*, 243 P.3d at 1080. Accordingly, Minnig's and Richardson's motions to dismiss are denied as to the breach of fiduciary duty claim.

Hunt argues that he is not a former employee, so the duties and obligations that apply to other defendants as former employees do not apply to him. Indeed, Hunt does not owe any fiduciary duties to Moonlight. Any liability must be based on either civil conspiracy or aiding and abetting another defendant's breach of fiduciary duty.

As discussed above, Moonlight has adequately alleged the existence of a conspiracy, so "all of the defendants [may be] liable for each individual act of the other defendants." *Tricore Investments*, 485 P.3d at 121 (internal quotation marks omitted). That said, *Tricore Investments* also makes clear that "tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Id.* (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994)). This meant that the defendant who was a party to the contract at issue in *Tricore* could not be held liable for conspiracy to interfere with the contract because a party

"cannot tortiously interfere with its own contract." *Id.* at 121–22 (quoting *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.*, 851 P.2d 946, 950 (1993)). Based on the same principle, the Idaho Supreme Court also concluded that the other co-defendants who were not parties to the contract could not be held liable for engaging in a conspiracy to breach that contract. *Id.* at 122.

That principle applies here.[1] Hunt does not owe Moonlight any fiduciary duty, so he is not legally capable of committing the tort. This would seem to preclude any liability for breach of fiduciary duty against Hunt based on conspiracy. Moreover, as already discussed, Moonlight has not sufficiently alleged that Hunt aided and abetted any other defendant's wrongdoing. Looking more specifically at the breach of fiduciary duty claim, that failure becomes clear as the Amended Complaint contains no allegations explaining how Hunt substantially assisted any of his co-defendants' breaches of fiduciary duty. Accordingly, the motion to dismiss the breach of fiduciary duty claim against Hunt is granted with leave to amend.

---

[1] California courts applying *Applied Equipment* have reached the same conclusion. *See e.g.*, *Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI*, 100 Cal. App. 4th 1102, 1106 (Ct. App. 2002) ("Whitehall cannot be liable for the General Partners' breach of their fiduciary duty because Whitehall, ***which is neither an employee nor agent of the General Partners and which owned no fiduciary duty to Everest***, is legally incapable of committing the tort underlying the claim of conspiracy.") (emphasis in original).

**F.      Count Six: Intentional Interference with Contractual Relations**

All three defendants move to dismiss Moonlight's claim for intentional interference with contractual relations. Moonlight alleges that the defendants' access to and use of confidential and proprietary information interfered with Moonlight's relationships with its clients. To allege a claim for intentional interference with contractual relations, Moonlight must allege: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendants; (3) intentional interference causing a breach of the contract, and (4) injury to Moonlight resulting from the breach. *Bybee v. Isaac*, 178 P.3d 616, 624 (Idaho 2008). Here, Moonlight alleges it had contracts with its clients and that, as employees of Moonlight, Minnig and Richardson knew of those contracts. *Am. Compl.* at ¶¶ 121–122, Dkt. 46. It also alleges that Minnig and Richardson interfered with those contracts by accessing sensitive client information and sharing that information with McCoy, which caused the interference and damage to Moonlight. *Id.* at ¶ 65.

Further, based on Moonlight's civil conspiracy allegations, Hunt is plausibly liable for the interference with contractual relations as well. "A civil conspiracy gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an

unlawful manner." *Tricore Investments*, 485 P.3d at 121 (quoting *McPheters*, 155 P.3d at 1174). Moonlight alleges Hunt was a member of the conspiracy along with the co-governors of Freedom Recovery, Minnig and McCoy. *Id.* at ¶ 11. Accordingly, Hunt is plausibly liable for interference with contractual relations. These allegations are sufficient to survive a motion to dismiss and all three motions are denied.

### G.    Count Seven: Intentional Interference with Prospective Economic Advantage

Similarly, Moonlight also alleges that the defendants intentionally interfered with its prospective economic advantage. To state a claim for intentional interference with prospective economic advantage, Moonlight must allege: (1) the existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact that of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted. *Brockett Co. LLC v. Crain*, 483 P.3d 432, 441 (Idaho 2021). "The knowledge element may be satisfied by actual knowledge of the prospective economic advantage or by *knowledge of facts which would lead a reasonable person to believe that such interest exists*." *Wesco*, 243 P.3d at 1081 (cleaned up) (emphasis in original).

Moonlight has alleged a valid economic expectancy in its confidential and proprietary information. *Am. Compl.* at ¶ 33, Dkt. 46. For one, Moonlight offers innovative intensive behavioral health programming not offered by other facilities in Idaho. *Id.* at ¶ 10. It's ability to continue offering its unique programming plausibly create a valid economic expectancy. Further, it has also alleged that Moonlight has an economic expectancy based on its ongoing and prospective relationships with clients. *Id.* at ¶ 129; *Sky Capital Group, LLC v. Rojas*, No. 1:09-CV-00083-EJL, 2009 WL 1370938, at *6 (D. Idaho 2009) ("[Plaintiff] has a valid economic expectancy in the retention and renewal of its customer base.").

 Richardson and Minnig, as former employees, knew of facts which would lead a reasonable person to believe a valid economic expectancy exists. *Am. Compl.* at ¶¶ 32, 33, Dkt. 46. Moreover, even to the extent they lacked this knowledge, they may still be liable for interference because McCoy certainly knew, or should have known, of the expectancy. *Id.* at ¶¶ 27–33, 55. As co-conspirators, Minnig, Richardson, and Hunt may be held liable for McCoy's acts.

The defendants using Moonlight's business model, intercepting and redirecting clients resulted in a termination of Moonlight's expectancy in maintaining current and prospective clients. *Id.* at ¶¶ 130–132. This interference was wrongful beyond the interference itself because it involved misappropriation

and theft of Moonlight's business records as well as unlawful access to those records under the CFAA. *Id.* at ¶ 129. Finally, Moonlight has sufficiently alleged it suffered damage as a result of the interference. *Id.* at ¶ 133. As such, all three motions are denied.

### H.    Count Eight: Breach of Contract

Moonlight alleges Minnig, Richardson, and McCoy breached their contracts with Moonlight.[2] To state a claim for breach of contract, Moonlight must allege: (1) the existence of a contract; (2) a breach of the contract; (3) damages caused by the breach; and (4) the amount of damages. *McCarthy Corp. v. Stark Investment Group, LLC*, 489 P.3d 804, 815 (Idaho 2021).

Moonlight alleges that each of the former employees were parties to contracts with Moonlight that included restrictions and obligations on the use and disclosure of Moonlight's information. *Am. Compl.* at ¶¶ 135–136, Dkt. 46. Minnig and Richardson violated these terms by disclosing this confidential and proprietary information to unauthorized individuals, including Moonlight's competitors. *Id*.

---

[2] The Court does not understand Moonlight to be alleging any claim for breach of contract against Hunt as the allegations in these counts are limited to "Former Employees." *See Am. Compl.* at ¶¶ 134–39, Dkt. 46. To the extent it does, that claim is dismissed as Hunt was not a party to any contract with Moonlight and based on *Tricore*, he cannot be held liable for a conspiracy to breach a contract he is not a party to. 235 P.3d at 122.

Moonlight suffered damages as a result of the breach of contract because the disclosure of information has allowed Moonlight's competitors "to profit at Moonlight's expense." *Id.* at ¶ 138. This is sufficient to state a claim for breach of contract and both motions are denied as to the claim for breach of contract.

## I.    Count Nine: Breach of the Implied Covenant of Good Faith and Fair Dealing

Moonlight further alleges that McCoy, Minnig, and Richardson breached the implied covenant of good faith and faith dealing.[3] Every contract, including at-will employment agreements, contain an implied covenant of good faith and fair dealing, "which 'requires the parties to perform, in good faith, the obligations *required by their agreement*.'" *Drug Testing Compliance Group, LLC v. DOT Compliance Service*, 383 P.3d 1263, 1273 (Idaho 2016). (quoting *Silicon Int'l Ore, LLC v. Monsanto Co.*, 314 P.3d 593, 607 (Idaho 2013)). "Any action by either party which violates, nullifies or significantly impairs any benefit" of the contract is a breach of the implied covenant. *Idaho First Nat'l Bank v. Bliss Valley Foods*, 824 P.2d 841, 863 (Idaho 1991) (internal citation omitted).

---

[3] Again, the Court does not understand Moonlight to be bringing this claim against Hunt as the allegations focus on the Former Employees. *Am. Compl.* at ¶¶ 140–45. To the extent it does, it is dismissed. There is no claim for conspiracy to breach this covenant as Hunt was not a party to the contract and Moonlight has failed to state a claim for aiding and abetting against Hunt.

Moonlight has alleged the existence of a contract between it and Minnig as well as between it and Richardson. *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 389–90 (Idaho 2005) (implied covenant of good faith and fair dealing "is found in all employment agreements, including employment-at-will relationships."). It alleges that Minnig and Richardson violated this covenant by accessing and disclosing confidential and proprietary information to compete with Moonlight. *Am. Compl.* at ¶¶ 52, 60, 64, 67, 130, Dkt. 46. These allegations sufficiently state a claim for breach of the implied covenant of good faith and fair dealing against both defendants.

### J.    Count Ten: Unjust Enrichment

Moonlight's final cause of action is for unjust enrichment against all defendants. "Unjust enrichment occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust." *Vanderford Co. v. Knudson*, 165 P.3d 261, 271 (Idaho 2007). To state a claim under this theory, the plaintiff must allege (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain without payment. *Medical Recovery Services, LLC v. Bonneville Billing and Collections, Inc.*, 336 P.3d 802, 805 (Idaho

2014). "To confer a benefit in the context of unjust enrichment, the plaintiff must give the defendant an interest in money, land, or possessions, or perform services beneficial to, or at the request of, the other." *Id.* at 806.

Moonlight has adequately alleged a claim for unjust enrichment against all three defendants. Each of the defendants received and retained a benefit from Moonlight by accessing confidential and proprietary information that they used to form competing businesses (or in the case of Richardson, that they now work at those competing business). *Am. Compl.* at ¶¶ 11, 33, 38, 56, 77–80, Dkt. 46. Finally, it would be unjust for the defendants to retain these benefits without compensating Moonlight. Accordingly, all three motions are denied as to the claim for unjust enrichment.

## ORDER

**IT IS ORDERED that:**

1.    Minnig's and Richardson's Renewed Motions to Dismiss (Dkts. 48, 51) are **DENIED.**

2.    Hunt's Renewed Motion to Dismiss (Dkt. 50) is **GRANTED in part and DENIED in part**. Any claim against Hunt based on aiding and abetting another defendant is dismissed with leave to amend.

3.    Any amended complaint must be filed within 28 days of this order. If

no amended complaint is filed, then this case shall proceed as set forth in this

order.

DATED: February 3, 2025

B. Lynn Winmill
U.S. District Court Judge